O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRIS J. R.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>　　　　Defendant. | Case No. 5:18-cv-00313-KES<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**BACKGROUND**

On March 19, 2010, Plaintiff Cris R. ("Plaintiff") filed an application for Social Security Disability Insurance Benefits ("DIB"). Administrative Record ("AR") 428-31. On March 25, 2010, he filed an application for Supplemental Security Income ("SSI"). AR 436. In both applications, Plaintiff alleged that he became disabled and unable to work on March 3, 2010, due to multiple impairments (AR 482-483).

---

[1] Effective November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security."

1

In their Joint Stipulation ("JS" at Dkt. 21), the parties summarized multiple hearings conducted by Administrative Law Judges ("ALJ"), adverse decisions, and remands by the Appeals Council. JS at 2-6. On May 25, 2017, the third and final administrative hearing occurred at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE"). AR 42-69.

On August 17, 2017, an ALJ issued the partially favorable decision that is the subject of this appeal. AR 12-28. The ALJ found that Plaintiff suffered from the medically determinable impairments of "chronic kidney disease; congestive heart failure; hypertension; obesity; learning disability; and borderline intellectual functioning." AR 15. The ALJ found that before August 3, 2015, Plaintiff had a residual functional capacity ("RFC") to perform a range of sedentary work limited to simple, repetitive tasks. AR 16-17. The ALJ assessed the same RFC on and after August 3, 2015, with one change: the "need to elevate his legs for two hours a day due to swelling and pain." AR 24.

Based on this RFC analysis, the ALJ found that before August 3, 2015, Plaintiff could have worked as an addresser, lens inserter, or assembler, and was therefore not disabled. AR 26-27. As of August 3, 2015, however, there were no jobs that existed in sufficient numbers in the national economy that Plaintiff could perform, so the ALJ found him disabled as of that date. AR 27.

Dissatisfied with the ALJ's findings that he only became disabled on August 3, 2015, i.e., eight months after his date last insured, Plaintiff timely appealed. JS at 6.

## II.
## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue,

481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006). Plaintiff bears the burden of establishing that the ALJ's decision is based on prejudicial legal error. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (court may not reverse absent a harmful error, and plaintiff bears burden of establishing that an error is harmful).

### III.
### ISSUES PRESENTED

Issue One: Whether the ALJ's RFC determination for the period between March 3, 2010 and August 3, 2015 (specifically, the ALJ's finding that Plaintiff did *not* need to elevate his legs for two hours/day during these years) is supported by substantial evidence. (JS at 7.)

Issue Two: Whether the ALJ erred in assessing Plaintiff's subjective symptom testimony. (Id.)

# IV.

# DISCUSSION

## A. ISSUE ONE: Leg Elevation.

### 1. Summary of the Relevant Medical Evidence.

The parties cited the following medical records in the Joint Stipulation which the Court summarizes in chronological order:

- AR 661-66 (March 3, 2010): Plaintiff was hospitalized for chest pain. As part of a nephrology consultation, Plaintiff reported "lower extremity edema of late." AR 661-62. Dr. Agarwal noted, "1+ edema bilaterally, lower extremities."[2] AR 662. On the same day, Plaintiff told Dr. Hoang that he had experienced shortness of breath for a month but could still walk and coach his daughter's softball team, including "running with the team nearly every day." AR 666. Dr. Hoang noted, "No pedal edema." Id. At the time, Plaintiff consumed 3 or 4 hard liquor drinks per day and was described as a "chronic heavy alcoholic." AR 659, 661, 666.

- AR 659 (March 4, 2010): Still at the hospital, Dr. Jamil observed "no pedal edema."

- AR 886-87 (May 18, 2010): Plaintiff told Dr. Agarwal, "edema worse after standing for long periods." AR 886. Dr. Agarwal noted, "trace edema." AR 887.

- AR 878 (June 7, 2010): Per Dr. Hoang, "pt [patient] c/o [complains of] … edema … when pt walk over 15-20'."

- AR 775-81 (June 17, 2010): Consultative examiner Dr. Klein performed an internal medicine evaluation. He observed no ankle swelling, normal gait, and

---

[2] The "1+" notation refers to a four-point scale commonly used to measure edema in which 1+ is the lowest rating. See https://www.medicinenet.com/edema/article.htm#what_does_pitting_edema_look_like_picture (defining clinical observations associated with each level of the four-point scale).

normal motor strength.  AR 779.  He opined that Plaintiff could walk, stand, or sit six hours per workday.  AR 780.

- AR 834 (November 21, 2011):  At an in-hospital consultation with Dr. Biswas, Plaintiff reported that he had been out of medicine for two months and was having weakness with exertion and "some lower extremity edema as well."  A physical examination, however, revealed "no edema."

- AR 870 (December 8, 2011):  This record states that Plaintiff made a follow-up visit to Dr. Hoang after a recent emergency room visit, referencing 11/21/11.  In the initial section documenting what Plaintiff told Dr. Hoang, the record says, "Pt c/o dizziness sometimes [after?] [illegible] on legs.  [illegible] x 3 day.  [illegible] walk only < ½ block and home to [illegible, possibly "sister's house"] 10' – [illegible] legs elevated [illegible] (45°) when pt sit down."  Plaintiff characterizes this record as an opinion by Dr. Hoang "that Plaintiff should elevate his legs at 45 degrees when sitting down."  (JS at 10.)  This difficult-to-read record appears instead to document what Plaintiff told Dr. Hoang he was already doing.

- AR 869 (January 19, 2012):  Plaintiff characterizes this record as, "Dr. Hoang repeated his instructions to Mr. Rabe stating 'Patient still needs elevate his legs to decrease leg edema.'"  (JS at 10.)  The Court's deciphers this note to say, "SOB [shortness of breath] … walking over ½ block; pt still [or stated] needs elevate his leg at home [illegible] by edema + SOB."  Again, this record may be documenting Plaintiff's complaints rather than giving Plaintiff instructions.

- AR 865-68 (January 24, 2012):  Dr. Hoang completed a functional capacity questionnaire.  He listed Plaintiff's impairments as DOE (dyspnea on exertion), elevated BNP (possibly brain natriuretic peptide), reduced EF (ejection fraction), and HTN (hypertension).[3]  AR 865.  As symptoms, he noted edema.  Id.  He

---

[3] Elevated BNP and reduced EF are both conditions associated with heart failure.  See https://www.aafp.org/afp/2006/1201/p1893.html (2006 paper on the role of BNP testing in heart failure),

opined that Plaintiff could sit for six hours/day but should elevate his legs to 45°
50-80% of the time spent sitting. AR 867. He also opined that Plaintiff would
need a 30-minute break after every 20 or 30 minutes of work and miss more than 4
days of work per month. AR 867-68. He wrote, "unable to stand for long because
of legs edema + CP [chest pain] + SOB." AR 868.

• AR 863 (January 31, 2012): At a follow-up from his last 2010 appointment, Dr. Agarwal noted "trace edema" in Plaintiff's extremities.

• AR 1008-09 (March 8, 2012): Dr. Sethi conducted a cardiovascular consultation. Dr. Sethi documented that Plaintiff reported "feeling that his legs become swollen when he walks and [he] has discomfort in both legs." AR 1008. When Dr. Sethi conducted a physical exam, however, he noted, "no peripheral edema." Id. Dr. Sethi recommended that Plaintiff "increase his activity level and make an effort at weight reduction." AR 1009.

• AR 892-94 (April 23, 2012): Dr. Agarwal again noted "trace edema" in Plaintiff's extremities. AR 893. He increased Plaintiff's prescribed dosage of Lasix/furosemide, a medication used to treat edema. AR 894.

• AR 895-97 (June 26, 2012): At his next appointment with Dr. Agarwal, Plaintiff reported "occ [occasional] cp, no sob, no edema." AR 895. He also reported, "edema better with Lasix." Id. Dr. Agarwal noted "trace edema" and recommended continuing with Lasix. AR 896-97.

• AR 952-56 (September 20, 2013[4]): Dr. Steinberg completed a handwritten

---

http://www.heart.org/HEARTORG/Conditions/HeartFailure/%20SymptomsDiagnosisofHeartFailure/Ejection-Fraction-Heart-Failure-Measurement_UCM_306339_Article.jsp#.XIKrsShKiUk (description of measurement of EF in heart failure).

[4] The date on the form is blank. This date was supplied in lieu of stating the frequency of treatment. AR 952. This date appears to be the one and only time Dr. Steinberg saw Plaintiff before completing the questionnaire. See AR 925.

cardiac impairment questionnaire. He checked that Plaintiff has edema, but he did not list edema as a primary symptom. AR 952-53. He opined that Plaintiff could only sit for one hour/day and could stand/walk for less than one hour/day. AR 954. He restricted Plaintiff against kneeling, bending, and stooping, but he did not mention leg elevation. AR 956.

- AR 936-38 (September 20, 2013): Dr. Steinberg completed a typed cardiac impairment questionnaire. This questionnaire does not mention edema or leg elevation. Dues to chest pain and fatigue, he offered the same opinion that Plaintiff could only sit one hour/day and could stand/walk for less than one hour/day. AR 938. He opined that "patient's symptoms and limitations apply dates back to 2010." Id.

- AR 925-36 (September 20, 2013): Dr. Steinberg completed a qualified medical evaluation report. Plaintiff denied joint swelling, muscle weakness, and atrophy. AR 932. Dr. Steinberg observed that he had a normal gait and could squat and get on and off the examination table without difficulty. Id. Dr. Steinberg's examination of Plaintiff's extremities revealed no edema. AR 934. He saw no feet or ankle swelling. AR 935-36. Plaintiff had a normal range of motion in his hips, knees, ankles, and toes. Id. He also had full motor strength in his lower extremities. AR 936.

- AR 950 (December 30, 2013): Dr. Hoang prepared a letter largely repeating the opinions in his January 24, 2012 functional capacity questionnaire (AR 865-68), including that Plaintiff would need to elevate his legs at a 45° angle for 60-80% of the workday.

- AR 1068-76 (January 2-6, 2014): Plaintiff was hospitalized complaining of abdominal pain. He went out to eat with family members in late December to celebrate his birthday, after which he developed gastrointestinal symptoms that did not subside. AR 1070. Physical examinations at the hospital noted no pedal edema (AR 1071) and no extremity edema (AR 1075, 1078, 1087). Plaintiff was

"ambulatory in the halls." AR 1081. Plaintiff was diagnosed with a "left perinephric hematoma." AR 1075. One of the doctors who treated Plaintiff was Andrew Cheung. AR 1088. Regarding the hematoma, Dr. Cheung noted, "Questionable ideology, possibly trauma as the patient reports his kids routinely jump on his abdominal area." AR 1048.

- AR 1032-35 (January 13, 2014): Plaintiff saw Dr. Cheung for a follow-up. Dr. Cheung conducted a physical exam and noted "Extremities: Edema: none." AR 1034.
- AR 985 (March 4, 2014): Plaintiff reported to Dr. Hoang, "↑ [increased] edema + AB [possibly aortic bruit] x 1 week." He also reported seeing Dr. Cheung in Corona in mid-January.
- AR 1028-31 (March 10, 2014): Dr. Cheung again noted no edema. AR 1030.
- AR 958-68 (March 31, 2014): Consultative examiner Haleh Safavi authored a report. On examination, Dr. Safavi noted that Plaintiff had a normal gait; his extremities did not show any edema; there was no evidence of swelling; and Plaintiff had normal muscle tone, bulk, and strength. AR 960-61. Based on this examination, Dr. Safavi opined that Plaintiff could perform a range of sedentary work and did not assess any need to elevate his legs. AR 963-68.
- AR 1022-27 (April 21, 2014): Plaintiff reported to Dr. Cheung "stable LE [lower extremity] edema." AR 1022. On physical examination, however, Dr. Cheung found no edema. AR 1024.
- AR 1103 (April 30, 2014): Dr. Agarwal completed a kidney disease impairment questionnaire. He noted "edema" as a primary symptom. AR 1103. He nevertheless opined that Plaintiff could walk, sit, or stand eight hours/day, and he did not recommend leg elevation. AR 1104, 1106.
- AR 1016-21 (June 16, 2014): Dr. Cheung found no edema. AR 1018.
- AR 1012-15 (July 21, 2014): Plaintiff told Dr. Cheung that he had lost 20

pounds in 2 months. AR 1012. Dr. Cheung saw no edema. AR 1014.

- AR 1064-67 (July 21, 2014): Dr. Cheung completed a kidney disease impairment questionnaire. He identified edema and fatigue as Plaintiff's primary symptoms. AR 1064. He opined that Plaintiff could sit, stand, or walk for 8 hours/day. AR 1065. The form asked whether Plaintiff would need to elevate his legs while seated, and Dr. Cheung left that section of the form blank. AR 1067.
- AR 1124-26 (January 12, 2015): Plaintiff visited Dr. Cheung again and reported "doing well since last visit" in July 2014. AR 1124. Plaintiff denied LE edema. Id. A physical exam revealed no extremity edema. AR 1125.
- AR 1127-29 (April 20, 2015): Plaintiff told Dr. Cheung "LE edema has resolved" and "doing well." AR 1127. An exam revealed no edema. AR 1128.
- AR 1131-33 (June 1, 2015): Plaintiff told Dr. Cheung, "no LE edema." AR 1131. Dr. Cheung observed no edema. AR 1132.
- AR 1109-10 (June 16, 2015): Dr. Hoang completed a disability impairment questionnaire. He identified Dr. Cheung's records as providing the "clinical and laboratory findings" supporting his opinions. AR 1107. He opined that Plaintiff could sit for two hours/day and walk or stand less than one hour/day. AR 1109. He also opined that it was "medically necessary" for Plaintiff to elevate both legs at "all times" to "waist level." Id.
- AR 1134-36 (July 13, 2015): Plaintiff told Dr. Cheung, "no LE edema." AR 1134. Dr. Cheung observed no edema. AR 1135.
- AR 1113-17 (August 3, 2015): Dr. Cheung prepared another kidney disease impairment questionnaire. He identified leg edema as a positive clinical finding. AR 1113-14. He indicated no limits on Plaintiff sitting or standing continuously during the work day. AR 1115. He also indicated that Plaintiff would need to elevate his legs while seated 1-2 hours/day. AR 1117. Finally, he stated that the earliest date to which the "description of symptoms and limitations" in the questionnaire applied was January 2014. Id.

|   |   |
|---|---|
| 1 | • AR 1137-39 (August 24, 2015): Plaintiff told Dr. Cheung, "no LE |
| 2 | edema." AR 1137. Dr. Cheung observed no edema. AR 1138. |
| 3 | • AR 1140-43 (December 21, 2015): Plaintiff reported to Dr. Cheung, |
| 4 | "stable LE edema." AR 1140. Dr. Cheung observed "trace edema." AR 1141. |
| 5 | • AR 1147-50 (August 15, 2016): This was Plaintiff's next appointment |
| 6 | with Dr. Cheung. Dr. Cheung again observed "trace edema." AR 1149. |


<br>

• AR 1137-39 (August 24, 2015): Plaintiff told Dr. Cheung, "no LE edema." AR 1137. Dr. Cheung observed no edema. AR 1138.

• AR 1140-43 (December 21, 2015): Plaintiff reported to Dr. Cheung, "stable LE edema." AR 1140. Dr. Cheung observed "trace edema." AR 1141.

• AR 1147-50 (August 15, 2016): This was Plaintiff's next appointment with Dr. Cheung. Dr. Cheung again observed "trace edema." AR 1149.

### 2. The ALJ's Assessment of the Relevant Medical Evidence.

The ALJ evaluated the doctors' opinions, as follows:

• <u>Dr. Vu</u>: This medical expert ("ME") testified at the hearing. He did not assess any requirement for leg elevation. AR 52. The ALJ gave "significant" weight to Dr. Vu's clinical diagnoses but "little" weight to his RFC opinions which the ALJ found overstated Plaintiff's functional abilities. AR 25.

• <u>Dr. Safavi</u>: The ALJ gave "significant" weight to her report, because her opinions were generally consistent with the longitudinal evidence and supported by her own consultative examination. AR 22.

• <u>Dr. Steinberg</u>: The ALJ gave "minimal" weight to his opinions because his restrictive functional assessments were inconsistent with his own "benign" evaluation and other medical evidence. AR 20.

• <u>Dr. Cheung</u>: The ALJ gave "some" weight to his July 21, 2014 assessment (AR 1064-67), discounting it as "somewhat optimistic" in light of Plaintiff's medical history. AR 22. The ALJ gave "great" weight to his August 3, 2015 assessment (AR 1113-17), finding it well-supported by the evidence and the product of a long treating relationship. AR 25.

• <u>Dr. Hoang</u>: The ALJ gave "not significant" weight to the opinions in his December 30, 2013 letter (AR 950), because they lacked supporting clinical findings and contradicted Dr. Hoang's own treating notes. AR 21-22. The ALJ gave "some" weight to his June 16, 2015 questionnaire (AR 1109-10) but found it inconsistent with the medical evidence and Plaintiff's admitted activities. AR 23.

Regarding leg elevation, the ALJ expressly declined to adopt the limitation in Dr. Hoang's June 16, 2015 questionnaire that Plaintiff needed to elevate his legs "at all times" to waist level. AR 23, citing AR 1109. The ALJ reasoned as follows:

> [T]he undersigned specifically declines to adopt a limitation with respect to elevating his legs prior to the established onset date. In making this decision, the undersigned considered the clinical and diagnostic evidence contained in the record, the testimony of the vocational expert, and the statements of the . . . claimant's representative as set forth in his post-hearing brief …. The claimant's representative contends that the need for leg elevation came in 2011 (Exs. 29E [AR 618]). The undersigned was unable to discern from Dr. Hoang's treatment notes that the claimant was advised to elevate his legs at a 45-degree angle at any point in the relevant period. The record does not contain any objective diagnostic or clinical evidence that the claimant had a medical necessity to elevate his legs prior to the established onset date.

AR 23.

### 3. Analysis of Claimed Errors.

#### a. Substantial Evidence.

Plaintiff contends that the ALJ's finding that Plaintiff only needed to elevate his legs as of August 3, 2015 lacks substantial evidentiary support. (JS at 13.) According to Plaintiff, "the record documents the need to elevate the lower extremities at least as far back as December 8, 2011 (AR 870), when he was first instructed to do so by his treating physician Dr. Hoang, M.D." (JS at 13.)

Dr. Cheung opined in July 2014 that Plaintiff did not need to elevate his legs (AR 1067), then opined on August 3, 2015 that he should elevate them for 2 hours/day (AR 1117). Dr. Cheung's July 2014 assessment is consistent with Dr.

Safavi's March 2014 opinion and Dr. Agarwal's April 2014 opinion – both of which stated that Plaintiff could perform fulltime, sedentary work without the need for leg elevation. AR 958-68, 1103. Dr. Cheung's July 2014 assessment is also consistent with his own treatment notes from several consecutive months in early 2014 which noted no leg edema. AR 1030, 1024, 1018, 1014.

About one year later, on August 3, 2015, Dr. Cheung opined that Plaintiff should elevate his legs for 2 hours/day (AR 1117). Dr. Cheung apparently saw a worsening of Plaintiff's condition during this year that caused him to change his functional assessment.

Dr. Hoang opined on multiple occasions that Plaintiff needed to elevate his legs, and his opinions grew more extreme over time. See AR 867 (1/24/12 opinion that Plaintiff should elevate his legs 45° for 50 to 80% of his sitting time), AR 950 (12/30/13 opinion that Plaintiff should elevate his legs 45° for 60 to 80% of his workday), AR 1109 (6/16/15 opinion that Plaintiff should elevate his legs 90° at "all times"). The ALJ gave specific, legitimate reasons for discrediting these opinions. First, they contradict Plaintiff's treating notes from the same time periods. In January 2012, Dr. Agarwal saw only "trace edema." AR 863. After treatment with medication, by June 2012, Plaintiff reported no edema. AR 895. In September 2013, Dr. Steinberg examined Plaintiff and saw no edema. AR 934. In December 2013, Plaintiff could go out to eat with family members, and in January 2014, the hospital saw no lower extremity edema. AR 1070, 1075, 1078. In the same month when Dr. Hoang opined that Plaintiff required constant leg elevation (i.e. June 2015), Plaintiff told Dr. Cheung that he had no lower extremity edema, and Dr. Cheung observed none. AR 1131-32.

Second, Dr. Hoang's opinions are inconsistent with Plaintiff's testimony and reported activities. At the most recent hearing, Plaintiff reported that he understood his doctor's recommendation to elevate his "leg" as applying to his "right leg mainly." AR 56. He testified that he elevated his right leg to waist level

3 or 4 times a day for about 15 minutes. Id. This is a far cry from elevating both legs at all times, or even at all times when seated.

In sum, the ALJ properly weighed the relevant medical evidence, and substantial evidence supports his determination that Plaintiff did not need to elevate his legs in a way that would more than minimally effect his ability to work until August 3, 2015.

### b. Dr. Hoang.

Plaintiff contends that the ALJ failed to give a specific, legitimate reason for discrediting Dr. Hoang's treatment notes. According to Plaintiff, the ALJ falsely claimed that the notes are illegible, and as a result, failed to discuss Dr. Hoang's opinions about edema and leg elevation. (JS at 10, 12.)

Dr. Hoang's notes are difficult to read. As discussed above, the ALJ could reasonably have interpreted the 2010 and 2011 notes about leg elevation cited by Plaintiff's counsel as documenting what Plaintiff told Dr. Hoang he was doing – not what Dr. Hoang recommended that Plaintiff do. Moreover, as discussed above, the ALJ gave specific and legitimate reasons for discrediting Dr. Hoang's opinions relevant to leg elevation: inconsistency with contemporaneous treating records and Plaintiff's reported activities.[5] AR 22.

### c. Dr. Cheung.

Finally, Plaintiff contends that the ALJ misinterpreted Dr. Cheung's August 3, 2015 opinion about leg elevation, because Dr. Cheung stated that his limitations applied as of January 2014. (JS at 11-12, citing AR 1117.)

Again, Dr. Cheung completed a questionnaire in July 2014 in which he

---

[5] Indeed, if Dr. Huong's treatment notes are interpreted as recommending as far back as 2010 that Plaintiff needed to elevate both legs when seated, his recommendation would be inconsistent with his own treatment notes from March 3, 2010, documenting that Plaintiff could coach his daughter's softball team and run with the team nearly every day despite mild edema. AR 666.

13

found that Plaintiff could sit, stand, or walk for the entirety of an 8-hour workday and in which he declined to opine that Plaintiff needed to elevate his legs during the workday. AR 1065-67. Given these express opinions from July 2014, it would be unreasonable to interpret Dr. Cheung's August 2015 questionnaire responses as retroactively imposing greater functional limitations going back to January 2014. Plaintiff has not demonstrated legal error.

B. **ISSUE TWO: Plaintiff's Subjective Symptom Testimony.**

    **1. Summary of Plaintiff's Subjective Symptom Testimony.**

In his Adult Function Report dated June 1, 2010, Plaintiff reported that he took two walks on an average day. AR 516. He tried to get outside at least three times a day. AR 519. He could only walk 1½ blocks before stopping to rest.[6] AR 521. At home, he was able to prepare breakfast daily. AR 518. He did household chores including washing dishes and folding clothes, but he could not do other work because of "shortness of breath" and his "feet and legs swell up." AR 518-19. Socially, he went out to eat or to the movies "maybe once or twice per week." AR 520. Three times per week, he accompanied his girlfriend who drove to pick up his daughter from school. Id. He did not check the box indicating that his condition affected "sitting." AR 521. He did not use a cane or crutches. AR 522.

In an exertional questionnaire from January 2011, Plaintiff reported that his ankles swell "from standing for long periods of time." AR 554. Nevertheless, on an average day, he was able to take a walk and do some household chores such as washing dishes, carrying laundry, vacuuming, and throwing out trash.[7] AR 554-55. He took a three-hour nap most days. AR 556. He again indicated that he did

---

[6] Compare, in March 2010, Plaintiff told doctors that he was coaching his daughter's softball team and running with the team nearly every day. AR 666.

[7] He also testified that his wife does the laundry and he could not vacuum due to asthma and dust. AR 135.

14

not use a cane or crutches. Id.

At the first hearing in February 2012, Plaintiff testified, "I can't constantly walk, my legs get all swollen." AR 78. He claimed that he was hospitalized in November 2011 because his legs were so swollen he could not walk.[8] AR 82. He testified that he could only sit 10 or 20 minutes and needed to elevate his feet. AR 84. After standing for 10 minutes, his legs swelled. AR 91. He could only walk half a block before his legs became "all swollen." AR 85. He tried to stay off his feet as much as possible and did not do any household chores. AR 88. He could not be on his feet more than a few minutes to wash dishes. AR 89. At the time, he was drinking a can or two of beer every other day. AR 87.

At the second hearing in August 2014, Plaintiff testified that the last grade he completed was ninth-grade.[9] AR 123. After his doctors instructed him to stop drinking, he stopped drinking on a regular basis about a month after he got out of the hospital, apparently referring to his January 2011 hospitalization. AR 126-27. When he tried to do physical activities like household chores or walking to the park, he experienced swelling from his calf down to his toes. AR 128. He estimated that he could only be on his feet for one half hour before needing to sit and elevate his feet. AR 128-29. At home, he generally elevated his feet by laying down. AR 129. His doctors recommended that he elevate his legs when he saw swelling, and he estimated that he did so at least twice a week, but sometimes more often if he spent longer standing. Id. On a "good" day, his legs would not swell;

---

[8] Under "history," the January 2011 hospital records state, "The patient has been out of his medication for 2 months …. He was having chest pain with exertion with any walking and was having weakness with exertion…. He has some lower extremity edema as well. He was admitted through the ER where his blood pressure was severely elevated …." AR 834. Under "physical examination," the hospital records state, "no edema." Id.

[9] At the first hearing, he testified that he started the 11th grade. AR 75.

15

he estimated he had four "good" days per week. AR 134.

At the third hearing in May 2017, Plaintiff testified that his legs swell whenever he walks or is on his feet. AR 55. He takes Lasix 2 or 3 times a day to decrease swelling. Id. His doctors had recommended elevating his "leg," and he explained that applied to his "right leg mainly." AR 56. He testified that he elevated his right leg to waist level 3 or 4 times a day for about 15 minutes. Id. He estimated that he could be on his feet for about an hour before his feet would start to swell, requiring him to sit down and elevate his feet. AR 58. His hematoma gave him "problems" when sitting, but he estimated that he could sit for a "couple hours" before needing to change position. Id. He testified that he has a prescription for a cane and crutches because he "cannot move." AR 60.

### 2. The ALJ's Reasons for Discounting Plaintiff's Subjective Symptom Testimony.

The ALJ gave at least the following five reasons for discounting Plaintiff's extreme subjective symptom testimony: (1) inconsistent with his daily activities, (2) inconsistent with the medical evidence, (3) routine, conservative treatment, (4) noncompliance with recommended treatment, and (5) lack of supporting objective evidence. AR 18-19.

As an example of inconsistency with daily activities, the ALJ noted that Plaintiff could regularly go to movies or out to dinner. AR 18. This is inconsistent with Plaintiff's testimony that he could sit only 10 or 20 minutes and needed to elevate his legs while doing so. AR 84; see also AR 17 (the ALJ referenced Plaintiff's testimony that he has trouble sitting due to his hematoma [AR 58] and must elevate his legs throughout the day, i.e., after standing only a short while [AR 91, 128-29]). The ALJ noted Plaintiff's testimony that he can do some household chores and meal preparation. AR 18 (citing AR 518-19 and 554-55). This is inconsistent with Plaintiff's later testimony that his symptoms are so debilitating that they prevent him from doing any household chores. AR 88 ("Q: Are you able

to do any household chores at all?  A: No, I don't.")

As an example of inconsistency with the medical evidence, the ALJ contrasted Plaintiff's testimony that his legs are always swollen[10] with numerous records from physical exams documenting no swelling or no edema.  AR 18.  Indeed, as summarized above, many of those records reflect Plaintiff reporting edema to a doctor, but the doctor observing no edema or trace edema (e.g., AR 886-87, 834, 1008, 1022-24), not a condition that would limit Plaintiff's standing and walking to the extent he testified.

Regarding noncompliance, the ALJ found, "claimant's noncompliance with blood pressure medications undermines the credibility of his allegations of persistent chest pain and dyspnea, as it appears the symptoms are related to the claimant's hypertension."  AR 19.  The ALJ cited records from Plaintiff's November 2011 hospitalization indicating that he had run out of medications and was counseled regarding the need for compliance.  AR 19, citing AR 834.  The ALJ also cited a March 2012 cardiology consultation at which Plaintiff admitted that he had not taken his blood pressure medication prior to the examination.  AR 19, citing AR 1009; see also AR 1016 (in June 2014, Plaintiff told Dr. Cheung that he occasionally missed doses of clonidine, a blood pressure medication, to avoid its sedating side effects); AR 895-97 and AR 1028 (in June 2012, Plaintiff's edema resolved after taking Lasix, but he stopped taking this medication and only started it again in March 2014).

Thus, substantial evidence supports the above-discussed reasons supplied by the ALJ.  Considered together, they provide a clear and convincing reason to

---

[10] While Plaintiff did not use the word "always," he did testify that his legs swell from walking, being on his feet, and "just moving around."  AR 55.  He also testified that he could only sit 10 or 20 minutes and stand for 10 minutes due to leg swelling, indicating leg swelling was always a problem unless he was laying down.  AR 84, 91.

discount Plaintiff's subjective symptom testimony.

V.

**CONCLUSION**

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED:  March 12, 2019

_/s/ Karen E. Scott_
KAREN E. SCOTT
United States Magistrate Judge